UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CAROL A. MILES, | ) | Case No.: 5:11-CV-04013-LHK |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration | ) ) ) | GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| Defendant. | ) ) | |

Plaintiff Carol A. Miles ("Miles") appeals a final decision of the Commissioner of Social Security ("Commissioner") denying Miles' application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before the Court are Miles' motion for summary judgment or, in the alternative, for remand, and the Commissioner's cross-motion for summary judgment. Both motions are fully briefed. ECF Nos. 16, 17, 18. Upon consideration of the briefing, the record in this case, and for the reasons set forth below, the Court DENIES Miles' motion for summary judgment and Miles' alternative motion to remand, and GRANTS the Commissioner's cross-motion for summary judgment.

1

### I.       BACKGROUND

Miles is a fifty-one year old woman who was born on February 24, 1962.  AR 343.  Miles completed one year of college.  AR 163.  She worked as a Certified Nurse Assistant and medical clerk.  AR 159–60.  Miles sustained an injury on April 14, 2004, while attempting to lift a patient during the course of her work.  AR 532, 601.  This injury resulted in Miles experiencing lumbar back pain and sciatica.  AR 588.  One year later, Miles underwent successful decompression laminectomy surgery.  AR 545-546, 549-550.  Following post-rehabilitation and reports of pain, Miles underwent a second surgery on June 29, 2006, to remove hardware from the first surgery.  AR 487-488, 499, 507.  Miles initially experienced relief from her pain symptoms, but Miles began experiencing pain again three months later.  AR 483, 485.  Miles also was diagnosed with depression and panic disorder in 2006.  AR 537.  Miles continues to experience depression and pain from the fusion of her L4 and L5 vertebrae.  AR 51-53.  Miles claims these impairments render her disabled as defined by the Commissioner and therefore entitled to an award of benefits.

Miles filed concurrent applications for DIB and SSI on August 27, 2008.  AR 13.  Miles' applications were denied both initially and upon reconsideration.  AR 13, 107.  Miles requested a hearing, which took place on May 18, 2010, before Administrative Law Judge Christopher Skarda ("the ALJ").  AR 13.  Miles appeared with counsel and testified about her mental and physical health as they relate to her ability to work.  AR 35–83.  Vocational Expert Darlene McQuery ("the VE") also testified at the hearing.  AR 66–81.

The ALJ issued his decision on June 25, 2010, in which he denied Miles' request for DIB and SSI.  AR 13–24.  In making his determination, the ALJ considered evidence from medical reports and testimony from the hearing.  AR 15–24.  The ALJ then analyzed Miles' claims under the five-step evaluation process for determining disability.  AR 14–15; *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The ALJ concluded that Miles was not disabled and denied her request for DIB and SSI.  AR 23-24.

2

United States District Court
For the Northern District of California

1    Miles appealed the ALJ's decision to the Appeals Council and submitted additional

2    evidence in the form of her attorney's statements raising the arguments Miles raises here.  AR 5.

3    The Appeals Council considered the additional arguments but determined that the arguments did

4    not provide a basis for disturbing the ALJ's decision.  AR 1.  The Appeals Council denied Miles'

5    request for review.  AR 1.  The Commissioner adopted the decision and it became final on June 13,

6    2011. AR 1.  Before the Court is Miles' appeal of that decision.

7    **A.    Medical Evidence**

8    The Court begins with a summary of the medical evidence before the ALJ, including both

9    Miles' medical evidence and the evidence from the Commissioner's agency consultants.

10           **1.    Evidence of Miles' Physical Impairment**

11    Miles sought treatment from several physicians following her back injury in 2004.  Miles

12    reported pain in her lower back to her employer, and in July 2004, Miles was referred to Dr.

13    Sherman Tran ("Tran") for a magnetic resonance imaging scan ("MRI") and a series of lumbar

14    epidural cortisone injections.  AR 523, 597, 599.  The injections did not ameliorate Miles' lower

15    back pain.  AR 523, 599.  Another physician, Dr. Norman Khan, performed an EMG/nerve

16    conduction study but could not identify a clear physical impairment for Miles' pain.  AR 523, 590.

17           **a.    Dr. Randall Seago**

18    Because Miles' condition was not improving, in September 2004, Tran referred Miles to

19    Dr. Randall Seago ("Seago"), an orthopedic spine surgeon.  AR 593.  Seago initially recommended

20    treating Miles with pain management and psychological treatment because Seago found Miles'

21    "emotional status needs to be stabilized before considering surgical treatment for her rather

22    significant pathology."  AR 581, 593.  Miles' lower back pain continued, however, prompting

23    Seago to recommend spinal surgery, though Seago cautioned Miles that the operation would aid

24    but not cure her pain.  AR 523, 568, 559.  Seago performed the recommended procedure, a

25    decompressive laminectomy, on July 12, 2005.  AR 523, 548-550.  Miles initially experienced

26

3

27

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1 | partial relief from her lower back pain, but her leg pain persisted and worsened about two months

2 | later.  AR 532, 545-546.

3 |   Miles' pain continued to worsen, and Seago believed hardware implanted during the first

4 | surgery was causing Miles' pain in her lower back and legs.  AR 499.  On Seago's

5 | recommendation, Miles underwent a second surgery to remove this hardware on June 29, 2006.

6 | AR 487-488, 491.  Initially, Miles experienced "dramatic improvement in pain," as observed by

7 | Seago, especially in Miles' left leg.  AR 484.  Unfortunately, Miles continued to experience pain in

8 | her right leg.  AR 485.  On October 9, 2006, Seago noted that Miles was "upbeat about returning to

9 | her rehab program."  AR 483.

10 |   On August 15, 2007, Seago noted that Miles displayed a limited range of motion and

11 | experienced pain when she performed straight leg raises.  AR 405.  On May 27, 2008, Seago

12 | referred Miles to Insight Imaging to undergo another diagnostic MRI.  In his report two months

13 | later, Seago found that Miles' MRI results "did not reveal significant pathology" nor "significant

14 | nerve compression."  AR 392.  Seago requested that two separate radiologists interpret Miles' MRI

15 | results to confirm his conclusions, which they did.  AR 309, 392.  Seago recommended a

16 | "multidisciplinary pain program" since he could "find no pathology, which would require any

17 | surgical procedure."  AR 392.  Seago determined that Miles "will probably need chronic pain

18 | management."  AR 16, 392.  Two months later, Seago attempted to refer her to a pain specialist in

19 | Texas since Miles planned to move to Texas, but in March 2010, Miles decided to stay in the San

20 | Jose Area.  AR 377–78.

21 |   Seago evaluated Miles and issued a report on May 17, 2010, indicating that Miles has a

22 | number of limitations in her ability to work including needing to walk every forty-five minutes, to

23 | take unscheduled breaks for five minutes, and to sit for six hours a day at most.  AR 368-369.

24 |

25 |

26 | 4

27 | Case No.: 5:11-CV-04013-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S

28 | CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Seago opined in his evaluation that even though Miles had various mental and physical limitations

2    on her ability to work, she was "capable of low stress jobs."[1]  AR 368.

3              **b.**    **Rehabilitation at SpineOne**

4         Following Miles' first back surgery, Seago referred Miles to Dr. Darrell Bruga ("Bruga")

5    for rehabilitation for Miles' spine, including gentle stretches, core strengthening, and "focus on

6    wellness behavior."  AR 544.  Bruga was part of SpineOne, a rehabilitation center.  AR 544.  Miles

7    improved under Bruga's care but then plateaued.  AR 537.  Bruga suggested that Miles begin

8    SpineOne's "interdisciplinary pain rehabilitation program."  AR 528-530.  In February 2006, Miles

9    went through an evaluation to determine her suitability for the program.  AR 514.  The SpineOne

10   medical providers who evaluated Miles described her as a "strong candidate" with "the motivation

11   and clear physical potential to improve her overall status."  AR 514.

12        Because of Miles' second surgery, Miles stopped rehabilitation with the SpineOne center

13   until February 2007.  AR 482, 463-469.  Miles participated in the interdisciplinary spine

14   rehabilitation program through February, but due to a car accident, Miles stopped attending in

15   March 2007.  AR 451, 456-462.

16             **c.**    **Dr. Paul Reynolds**

17        Miles saw Dr. Paul Reynolds ("Reynolds"), a pain specialist.  AR 611.  In his April 26,

18   2010 report, Reynolds opined that Miles "is debilitated to an extreme degree by [her] injury [and]

19   surgery."  AR 615.  Reynolds emphasized that Miles "uses too much medication for insufficient

20   benefit" and that "sedentary work" would only be possible if Miles "eliminated a fair amount" of

21   her medications.  AR 616.  Reynolds stated in his report his plan to significantly decrease Miles'

22   medication dosage.  AR 615.

---

[1] Seago's report, on which the ALJ partially relied, was created about eight months after Miles' insured period.  Nevertheless, "reports containing observations made after the period for disability are relevant to assess the claimant's disability" and "should not be disregarded solely" because they were created after the insured period.  *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)).

Case No.:  5:11-CV-04013-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

           **d.**        **Consulting Physical Physicians Offered By the Commissioner**

       Dr. Theodore Georgis Jr. ("Georgis") performed an orthopedic evaluation of Miles over the course of 24 minutes on December 10, 2008. AR 275. Georgis found that Miles had certain abilities such as being able to bathe and clothe herself, but found some significant physical limitations such as not being able to stand for more than four hours a day or sit more than six hours a day. AR 276, 280.

       Dr. C. Lopez ("Lopez"), a nonexamining physician, evaluated Miles' medical records to assess Miles' physical residual functional capacity. AR 286. Lopez determined that Miles could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and could push and/or pull controls without limitation. AR 287.

           **2.**        **Evidence of Miles' Mental Impairment**

       Miles also presented evidence from several sources regarding her depression and anxiety. Miles suffered from depression and other mental impairments before her April 2004 injury. AR 535. In November 2004, Miles began seeing Dr. John Parke ("Parke") on Seago's suggestion for psychological evaluation and treatment before going through any surgery for her back. AR 580, 593. Seago observed that Miles was improving under Parke's care. AR 579. Unfortunately, Miles only had two sessions of psychological treatment before authorization for that treatment was denied. AR 535, 576.

           **a.**        **Dr. David Devine**

       As described above, Seago referred Miles to Bruga at SpineOne, who recommended that Miles participate in SpineOne's "interdisciplinary pain rehabilitation program." AR 528-530. On February 23, 2006, Dr. David Devine ("Devine") evaluated Miles' psychological status as part of the evaluation for whether Miles should participate in the rehabilitation program. AR 532-537. In Devine's report following the evaulation, Devine found that Miles' response to a battery of tests

showed that she was "well within the range of a severe depressive disorder." AR 536. Although

Miles reported "moderate difficulties with concentration," Devine observed that Miles'

"[c]ognitive functioning was grossly intact," she was "alert and oriented," and "[h]er thinking was

logical, goal oriented … [and] her judgment seemed satisfactory." AR 535. Moreover, the tests

administered by Devine indicated to him that Miles showed "elevated levels of medication

seeking" and signs "associated with a cry for help or a tendency to catastrophize." AR 536.

Devine observed however that Miles was "very motivated to accept help and gain control over her

life" and that Miles "expresses good interpersonal rapport and cooperative attitude." AR 538.

Devine urged Miles to seek psychotherapeutic treatment in addition to her physical treatments. *Id.*

### b.    Dr. Hector Cerezo

On April 15, 2008, Miles' first met with Dr. Hector Cerezo ("Cerezo"). AR 267. On April

21, 2008, Cerezo saw Miles a second time. *Id.* In September 2008, based on Miles' two visits,

Cerezo completed an evaluation form in which Cerezo opined that Miles suffered from "Recurrent

Major Depression." AR 267. Cerezo further described Miles as having "poor hygiene," normal

speech, cooperative behavior, and as appearing apathetic. *Id.* Cerezo observed that Miles had

mild, slightly distracted concentration, and average intelligence, and was depressed. AR 267-268.

Miles also appeared goal directed with intact judgment but "preoccupied about her pain and

disability." AR 268.

Cerezo saw Miles again in January, March, and June of 2009. AR 364-366. In January,

Cerezo observed that Miles was crying and stated that Miles said she could not sleep and had hot

flashes and back pain. AR 366. In March, Cerezo observed that Miles was "tolerating the new

medicine," but that Miles felt more depressed. AR 365. Miles also stated that she had crying

spells, could not sleep, and was worried about the reduction in her workers' compensation income.

*Id.* In June, Cerezo observed that Miles had crying spells, disturbed sleep, and panic symptoms.

AR 364. Cerezo indicated that Miles stated the pain was worse after the surgery and that the pain

Case No.:  5:11-CV-04013-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    was causing Miles anger.  *Id.*  Miles and Cerezo's last meeting was June 9, 2009, because Miles

2    failed to appear for her follow-up appointments.  AR 344.  Cerezo states that Miles "had not been

3    compliant with her follow-ups" because she experienced difficulty driving and experienced back

4    pains.  AR 344.

5         In June 2009, Cerezo completed a mental medical source statement.  AR 319-322.  Cerezo

6    summarized Miles' mental impairments as "anxiety, exhaustion, crying spells, difficulty

7    remembering, hopelessness and helplessness."  AR 319.  Cerezo assessed Miles' global assessment

8    of functioning[2] ("GAF") at 48 with Miles' highest score in the past year being 44.  *Id.*

9    Furthermore, Cerezo opined that Miles has certain severe mental limitations preventing her from

10   working.  AR 320–22.  These limitations include total distraction that prevents Miles from (1)

11   understanding and remembering detailed instructions, (2) carrying out detailed instructions, (3)

12   maintaining concentration for two hours at a time, (4) performing activities within a schedule or

13   maintaining regular attendance, (5) sustaining an ordinary routine without special supervision, (6)

14   working with others without being distracted by them, (7) working a normal work week without

15   interruptions from psychological symptoms, (8) accepting instruction and responding appropriately

16   to criticism from supervisors, and (9) traveling in unfamiliar places or using public transportation.

17   AR 320–21.

18        Cerezo also found that Miles is unable to do certain tasks more than 20% of a forty-hour

19   workweek without distraction.  AR 320-321.  Cerezo found Miles limited in her ability to (1)

20   remember locations and work-like procedures, (2) understand and remember short and simple

---

[2] "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors.  A GAF between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).

Case No.:  5:11-CV-04013-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    instructions, (3) make simple work-related decisions, (4) and maintain socially appropriate

2    behavior and adhere to basic standards of neatness and cleanliness, among others. AR 320-321.

3        In August 2009, Cerezo provided a narrative summary of Miles' treatment. AR 343-345.

4    In that summary, Cerezo assigned Miles a current GAF of 43, indicating "[s]erious symptoms and

5    serious impairment of social and occupational functioning," and noted that Miles' highest GAF in

6    the last year was 45. AR 344. Cerezo described Miles as feeling "depressed, moody, impatient,

7    irritable, forgetful," with "difficulty concentrating, and disturbed sleep pattern [sic]." *Id.* Cerezo

8    indicated that Miles "still suffers from the disabling back pains, lack of energy, 'plenty of crying

9    spells,' exhaustion, [and] feelings of hopelessness and helplessness." *Id.* Cerezo noted that Miles

10    "had not been compliant with her follow-ups because of the difficulty driving, going to places, and

11    bad back" and that Cerezo had not seen Miles since Miles' June 2009 appointment. *Id.*

12        **c.**      **Consulting Psychiatric Physicians Offered By the Commissioner**

13        On December 12, 2008, Dr. Maria Acenas ("Acenas") performed a comprehensive

14    psychiatric evaluation on Miles. AR 283. Acenas found that Miles "has the ability to perform

15    simple and repetitive tasks . . . [and] accept instructions from supervisors." AR 284. Moreover,

16    Acenas found that Miles' "mental capabilities" would allow her to "perform work activities on a

17    consistent basis and maintain regular attendance in the workplace." AR 285. Acenas based these

18    findings on her single examination of Miles in which Acenas performed a variety of tests designed,

19    in part, to measure Miles' cognitive abilities. AR 284.

20        One month later, Dr. E. Murillo ("Murillo"), a non-examining physician, looked at the

21    evidence in the record to produce a mental residual functioning assessment and to determine

22    whether Miles' mental impairments were categorical disabilities. AR 293–305. Murillo

23    determined that Miles generally had few limitations in her residual mental functioning and did not

24    have any categorical mental impairments. AR 293–305.

9

United States District Court
For the Northern District of California

1

### d.     Statement from Miles' Daughter

2     Miles' daughter Shaynell Raymond ("Raymond") completed a third-party function report.

3  AR 185-192.  Raymond's report included descriptions that Miles "wakes up in pain and goes to

4  bed in pain," takes Raymond's younger brother to school, and goes to appointments.  AR 185.

5  Raymond observed that Miles' back pain prevented her from sleeping through the night and

6  affected Miles' ability to complete household chores.  AR 186-187.  Raymond also observed that

7  Miles gets "angry very easy [sic]" and that Miles' attention span "is very short."  AR 190.

8  **B.     The ALJ's Decision**

9     At step one, the ALJ found that Miles did not engage in "substantial gainful activity" from

10 the date of her alleged onset of April 14, 2004, through the last date Miles was insured on

11 September 30, 2009.  AR 15.  At step two, the ALJ found that Miles had severe impairments,

12 specifically depression, anxiety, and a fusion of L4-L5 vertebrae "involving chronic pain

13 syndrome."  AR 15.  At step three, the ALJ determined that Miles' impairments did not meet or

14 "medically" equal any categorically disabling impairment.  *See* AR 18; *see also* 20 C.F.R., pt. 404,

15 Subpt. P., App. 1 ("Listed Impairment").  Consequently, the ALJ found that Miles did not qualify

16 as categorically disabled.  AR 18-20.

17     At step four, the ALJ determined Miles' residual functional capacity ("RFC") to decide

18 whether Miles could perform any past relevant work.  AR 20.  The ALJ found that Miles had

19 exertional and non-exertional limitations on her ability to work.  AR 20.  Specifically, the ALJ

20 found that Miles' RFC had exertional limits such that she could "perform light work . . . except she

21 is able to stand and walk for 4 hours in an 8 hour work day."  AR 20.  The ALJ found that Miles

22 had certain non-exertional limitations on her RFC including being "limited to routine repetitive

23 tasks . . . [and] low stress job[s] involving decision making on an occasional basis with the ability

24 to occasionally adapt to changes in the work setting."  AR 20.  Because of these limitations, the

25 ALJ found that Miles "was unable to perform any past relevant work."  AR 22.

26
                                         10
27 Case No.:  5:11-CV-04013-LHK
   ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
28 CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    At step five, the ALJ concluded that, after considering Miles' age, education, work

2    experience, RFC, and the testimony of the VE, Miles "was capable of making a successful

3    adjustment to other work that existed in significant numbers in the national economy."  AR 23.

4    For example, the ALJ found that Miles could find employment "at a sedentary workload level in

5    assembly jobs" as suggested by the VE.  AR 23.  Consequently, the ALJ found that Miles was "not

6    disabled."  AR 23.

7    In making his determination, the ALJ relied on the medical evidence the Court described

8    above.  AR 15-18.  The ALJ observed that "the record as a whole" indicated that Miles "engages in

9    regular daily activities involving driving a car to care for herself and her family." AR 19.  The ALJ

10   also observed that Miles' "painful condition and use of medications has affected her functioning in

11   these areas."  *Id.*  The ALJ noted that "the record does not reflect pathology to be the cause of these

12   symptom[s]" and so "further psychological limitations in light of a physical condition are not

13   supported by the record."  *Id.*  The ALJ observed that "[t]he record also shows that [Miles] has

14   been motivated to work, that [Miles] has been advised to use a TENS unit instead of medications

15   indicating that further limitations are not justified in all areas."  *Id.*  The ALJ pointed out that

16   Reynolds, Miles' "treating pain specialist," "also indicated that some consideration should be given

17   to the effect on [Miles'] abilities to carry out her work duties while using pain medications at the

18   level at which she uses them."  *Id.*

19   The ALJ further described that Miles' "mental examinations have been consistently normal

20   indicating an absence of significant pathological psychological disorder."  *Id.*  The ALJ noted that

21   although Miles' GAF scores "have reflected a situation involving serious symptoms, some of those

22   scores have also indicated marked improvement in functioning involving a score up to 70 involving

23   mild symptomatology."  *Id.*  The ALJ highlighted that Miles' "record shows that she was making

24   plans to return to work, was motivated to complete a rehabilitation program, and was perceived as

25   doing well despite having a low score in that time."  *Id.*  The ALJ concluded that "the record

26

27

28

11

United States District Court
For the Northern District of California

1    demonstrates that other information shows a consistently higher level of functioning than incident

2    to [Miles'] GAF scores." *Id.* The ALJ determined that "overall, the record addresses depression as

3    an associated condition to [Miles'] back condition." *Id.*

4        The ALJ further found that the record "shows that [Miles'] use of pain medications has

5    some influence on [Miles'] mental work abilities and that [Miles] has ongoing depression

6    associated with her back condition for which antidepressant medications have been useful." AR

7    20. The ALJ noted, however, that "the record consistently reflects that [Miles] is motivated to

8    return to work and can return to some work." *Id.*

9        The ALJ acknowledged Miles' claim that "because of constant back and leg pain, back

10   spasms, and depression" Miles had "an ability to stand but with being up, lying down, and sitting

11   throughout the day, and an inability to deal with everyday life and not help her family since 2005."

12   AR 21. The ALJ concluded, however, that "[t]he record does not reflect the degree of limiting

13   effects" that Miles had alleged. *Id.* The ALJ noted that in 2008 and 2009, Miles' "treating

14   physician concluded that diagnostic evidence did not reflect a pathological reason for surgical

15   intervention and instead sought to treat [Miles'] use of medications with pain management

16   protocol." *Id.* The ALJ observed that earlier medical records revealed that Miles had a successful

17   surgery and "effective relief of all pain following surgery with gradual onset of reports of pain."

18   *Id.* The ALJ further observed that Miles "was a participant in her rehabilitation program with an

19   apparent sincere effort on her part to be re-employed." *Id.* The ALJ found that Miles' "mental as

20   well as physical examinations findings reflect limited range of motion anticipated as a usual

21   occurrence following back fusion surgery," and thus Miles' claims as to the limiting effects,

22   persistency, and intensity of Miles' pain associated with Miles' physical condition "are not

23   supported by entirely [sic] by the record and to the extent as alleged by" Miles. *Id.*

24       In making the RFC determination, the ALJ "relied upon the assessments completed by the

25   agency consultants because they are consistent with the record as a whole to the extent that the

26                                                    12

27   Case No.: 5:11-CV-04013-LHK
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
28   CROSS-MOTION FOR SUMMARY JUDGMENT

RFC reflects their findings." *Id.* The ALJ found Cerezo's assessments "persuasive in that they are consistent with a showing of depression secondary to a physical condition." AR 21-22. The ALJ found, however, that Cerezo "treated [Miles] infrequently and his GAF scores are not supported by the overall record which shows an absence of physical pathology to support the degree of pain limiting function which he concludes is present." AR 22. The ALJ relied on Seago's medical source statement "to show that [Miles] is capable of a low stress job as well as to provide for exertional and nonexertional limitations which are consistent with other information provided by the agency consultants and the record as a whole." *Id.* The ALJ did not credit Seago's opinion entirely, however, because Seago's statement "appears to be limited to [Miles'] condition as it existed after the application date and in light of one examination in 2009." *Id.* The ALJ concluded that the RFC was "supported by the record as a whole." *Id.*

## II.    LEGAL STANDARDS

### A.    Standard for Reviewing the ALJ Decision

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523; *see also Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one

United States District Court
For the Northern District of California

13

1    rational interpretation, the court must defer to the decision of the Commissioner.  *Moncada,* 60

2    F.3d at 523; *Drouin,* 966 F.2d at 1258.

3    **B.      Standard for Determining Disability**

4            The Social Security Act defines disability as the "inability to engage in any substantial

5    gainful activity by reason of any medically determinable physical or mental impairment which can

6    be expected to result in death or which has lasted or can be expected to last for a continuous period

7    of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must also be so severe

8    that a claimant is unable to do her previous work, and cannot "engage in any other kind of

9    substantial gainful work which exists in the national economy," given her age, education, and work

10   experience.  42 U.S.C. § 423(d)(2)(A).  "The claimant carries the initial burden of proving a

11   disability."  *Ukolov v. Barnhart,* 420 F.3d 1002, 1004 (9th Cir. 2005).  If the claimant proves a

12   prima facie case of disability, i.e., showing that (1) she is not presently engaged in a gainful

13   activity, (2) that her disability is severe, and (3) that she cannot perform work she has done in the

14   past, then the Commissioner has the burden of establishing that she can perform "a significant

15   number of other jobs in the national economy."  *Thomas v. Barnhart,* 278 F.3d 947, 955 (9th Cir.

16   2002).  "The Commissioner can meet this burden through the testimony of a vocational expert or

17   by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *Id.*

18           The ALJ evaluates Social Security disability cases using a five-step evaluation process.  20

19   C.F.R. § 404.1520:

20           1)      The ALJ must first determine whether the claimant is presently engaged in

21                   substantially gainful activity.  20 C.F.R. § 404.1520(b).  If so, the claimant is not

22                   disabled; otherwise the evaluation proceeds to step two.

23           2)      The ALJ must determine whether the claimant has a severe impairment or

24                   combination of impairments.  20 C.F.R. § 404.1520(c).  If not, the claimant is not

25                   disabled; otherwise the evaluation proceeds to step three.

26                                                        14

27   Case No.:  5:11-CV-04013-LHK
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
28   CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

3)     The ALJ must determine whether the claimant's impairment or combination of

impairments meets or medically equals the requirements of the Listing of

Impairments, 20 C.F.R. § 404, Subpart P, App. 1.; 20 C.F.R. § 404.1520(d).  If so,

the claimant is disabled; otherwise the analysis proceeds to step four.

4)     The ALJ must determine the claimant's residual functional capacity despite

limitations from the claimant's impairments.  20 C.F.R. § 404.1520(e).  If the

claimant can still perform work that the individual has done in the past, the claimant

is not disabled.  If the claimant cannot perform the work, the evaluation proceeds to

step five.  20 C.F.R. § 404.1520(f).

5)     In this step, the Commissioner has the burden of demonstrating that the claimant is

not disabled.  The Commissioner must show that the claimant can perform some

substantial gainful work in the national economy, considering a claimant's age,

education, and vocational background.  20 C.F.R. § 404.1520(g)(1).

### III.     ANALYSIS

Miles argues two points in support of her motion.  First, Miles asserts that the ALJ

incorrectly determined her RFC.  Second, Miles contends that as a result of the ALJ's incorrect

determination of her RFC, the ALJ asked an incomplete hypothetical to the VE, which led to an

incorrect assessment by the VE that there were significant jobs in the market that Miles could

perform.  Because the success of Miles' argument regarding the VE's assessment depends on the

success of Miles' argument regarding the ALJ's RFC determination, the Court first considers

whether the ALJ erred in his determination of Miles' RFC.

### A.     RFC Determination

Miles offers three reasons that the ALJ's determination of Miles' RFC was erroneous.

First, Miles argues that the ALJ improperly discounted the medical opinion of Cerezo, Miles'

treating physician.  Second, Miles contends that the ALJ improperly relied on GAF scores in

15

United States District Court
For the Northern District of California

1   determining her RFC.  Third, Miles asserts that the ALJ failed to consider Devine's medical

2   opinion.  The Court considers each in turn.

3          1.       The ALJ's Treatment of Cerezo's Opinion

4          Miles first argues that the ALJ erred by not giving Cerezo's assessment of Miles'

5   limitations controlling weight when the ALJ determined Miles' RFC.  In Cerezo's June 2009

6   assessment, Cerezo opined that Miles suffered from a "total distraction" in her ability to: (1) carry

7   out detailed instructions, (2) maintain attention and concentration for at least two hours at a time,

8   (3) sustain an ordinary routine without special supervision, (4) work with others without being

9   distracted by them, (5) work a normal work week without interruptions from psychological

10  symptoms, and (6) accept instructions and respond appropriately to criticisms from supervisors.[3]

11  AR 320-321.

12         The ALJ credited Cerezo to the extent that Cerezo's assessment indicated that Miles'

13  depression was secondary to her back condition.  AR 21-22.  The ALJ, however, did not credit

14  Cerezo's assessment of Miles' limitations.  *Id.*  The ALJ instead found that Miles was "limited to

15  routine repetitive tasks . . . [and] low stress job[s] involving decision making on an occasional basis

16  with the ability to occasionally adapt to changes in the work setting."  AR 21.  As reasons for the

17  weight given to Cerezo's assessment, the ALJ observed that Cerezo treated Miles "infrequently"

18  and Cerezo's "GAF scores are not supported by the overall record which shows an absence of

19  physical pathology to support the degree of pain limiting function which [Cerezo] concludes is

20  present."  AR 22.

21         Miles argues that the ALJ should have included Cerezo's limitations in Miles' RFC.  Miles

22  asserts that Cerezo was Miles' treating physician and thus the ALJ should have given Cerezo's

---

[3] Cerezo identified three other work-related functions with which Miles would suffer total
distraction: (1) understanding and remembering detailed instructions, (2) performing activities
within a schedule or maintaining regular attendance, and (3) traveling in unfamiliar places or using
public transportation.  AR 321-322.  Because Miles does not address these limitations in her
papers, the Court does not address them further.

16

assessment controlling weight.  Miles further asserts that substantial evidence in the record does

not support the reasons that the ALJ gave for not crediting fully Cerezo's assessment of Miles'

limitations.

### a.      Legal Standard

"There are three types of medical opinions in social security cases: those from treating

physicians, examining physicians, and non-examining physicians."  *Valentine v. Comm'r of Soc.*

*Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  "As a general rule, more weight should be given

to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."

*Lester  v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "The opinion of an examining physician is, in

turn, entitled to greater weight than the opinion of a nonexamining physician."  *Id.*

Accordingly, when evaluating medical evidence, an ALJ must give a treating physician's

opinion "substantial weight."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir.

2009).  "When evidence in the record contradicts the opinion of a treating physician, the ALJ must

present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported

by substantial evidence."  *Id.* (citing *Lester,* 81 F.3d at 830).  When a treating physician's opinion

is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for

disbelieving the treating physician.  *Id.* at 1228 n.8.

Because Cerezo was Miles' treating physician, which the parties do not dispute, the ALJ

had to provide clear and convincing reasons for discrediting Cerezo's opinion if it was

uncontroverted.  If Cerezo's opinion was disputed, the ALJ needed to provide only specific and

legitimate reasons.

### b.      Weight Given to Cerezo's Opinion

Miles first challenges the weight that the ALJ gave Cerezo's assessment, specifically that

because Cerezo was a treating physician, the ALJ should have given Cerezo's assessment of Miles'

limitations controlling weight.  The ALJ observed, however, that evidence in the record indicated

17

**United States District Court**
For the Northern District of California

that Miles was functioning at a level higher than Cerezo's assessment.  The ALJ noted that Miles

was motivated to return to work, which reports from Miles' medical providers during Miles' period

of rehabilitation support.  AR 20, 461, 514.  The ALJ further noted that Miles participated in daily

activities, which Raymond's statement supports.  AR 19, 185-192.  The ALJ observed that at least

some of Miles' work function problems related to Miles' overuse of pain medications, which

Reynolds' report supports.  AR 19, 615-616.  Furthermore, the ALJ indicated that Acenas had

determined that despite Miles' depression Miles could still work, albeit with limitations.  AR 18,

284.  Substantial evidence supports the ALJ's determination that Cerezo's opinion was not

undisputed and thus not entitled to controlling weight.

### c.      Reasons for Discounting Cerezo's Opinion

Miles next challenges the ALJ's reasons for discounting Cerezo's opinion.  Because

substantial evidence in the record contradicted Cerezo's opinion, the ALJ needed to provide

"specific and legitimate" reasons supported by substantial evidence for discounting Cerezo's

opinion regarding Miles' limitations.  *Lester*, 81 F.3d at 830.

Miles argues that the record does not support the ALJ's determination that Cerezo treated

Miles infrequently.  Miles also argues that the ALJ's reasoning regarding Cerezo's "infrequent"

treatment contradicts the ALJ's reliance on the agency consultants, who either saw Miles only once

or only reviewed her records.  As the record reveals, Cerezo saw Miles five times within a

fourteen-month period.  AR 267, 364-366.  Acenas, on the other hand, had only one single

examination of Miles.  AR 283-285.  Murillo only reviewed Miles' records.  AR 293-305. The ALJ

did not explain further why Cerezo's five appointments with Miles amounted to "infrequent"

treatment, especially when compared to Miles' single visit with Acenas.  On this point, the Court

agrees with Miles that the ALJ's reasoning is not well-supported.

The ALJ, however, provided other reasons for discounting the weight of Cerezo's

assessment.  The ALJ noted that the record indicated that Miles was able to function at a level

18

United States District Court
For the Northern District of California

greater than Cerezo's assessment of Miles' limitations and greater than what Cerezo's GAF scores for Miles suggest.  AR 19, 22.  The ALJ observed that the record indicated that Miles participated in daily activities, that Miles was motivated to complete her rehabilitation and return to work, that Miles' mental work abilities were affected by Miles' pain medications, and that anti-depressant medications were useful to treating Miles' depression, all of which the record supports.  AR 19-20; *see also* AR 458, 461 (observing Miles' motivation in rehabilitation and to return to work); AR 613 (Reynold's report regarding the effects of Miles' pain medications); AR  613 (Reynolds' observation that Miles indicated that anti-depressants aided Miles' condition).  The ALJ concluded that Miles was functioning at a higher level than Cerezo's assessment of Miles' limitations or than suggested by the low GAF scores Cerezo assigned to her.  The ALJ's determination is supported by substantial evidence in the record.  AR 20.

The ALJ also explained that the record indicated that Miles did not have the "physical pathology to support the degree of pain limiting function" that Cerezo assessed.  AR 22. Throughout the decision, the ALJ noted that the record indicated that Miles' depression was secondary to and associated with Miles' back pain, a finding Miles does not challenge.  AR 17, 18, 19, 20, 21-22.  The ALJ noted that Miles' "painful condition and use of medications has affected her functioning" in daily activities, but that "the record does not reflect pathology to be the cause of these symptom [sic]."  AR 19.  The ALJ concluded that "[t]his indicates that further psychological limitations in light of a physical condition are not supported by the record."  *Id.*  The ALJ highlighted that Seago, who treated Miles for her physical condition, opined that Miles could perform "low stress jobs," which further supports the ALJ's decision.  AR 22, 368.

The Court concludes that the ALJ presented specific and legitimate reasons supported by substantial evidence for discounting Cerezo's opinion.  While other evidence in the record might justify a different determination, the ALJ's determination satisfies the applicable legal standards;

19

United States District Court
For the Northern District of California

1    thus it is not the role of the Court to second-guess it.  *See Rollins v. Massanari*, 261 F.3d 853, 857

2    (9th Cir. 2001).

3                  **2.        The ALJ's GAF Scores References**

4            Miles argues that the ALJ placed improper weight on Acenas' GAF score of 70 both in

5    discrediting Cerezo's assessment of limitations and in determining Miles' RFC.  Miles argues that

6    because GAF scores do not directly correlate to the severity determinations used by the SSA, any

7    reliance by the ALJ on a GAF score is "reversible error."  ECF No. 18 at 6.  Miles also contends

8    that even if GAF scores are "substantial evidence," the ALJ erred because he did not explain his

9    reasoning for crediting Acenas' GAF scores over Cerezo's GAF scores.  ECF No. 16 at 17.

10           The Commissioner responds that the ALJ did not rely exclusively on GAF scores.  ECF No.

11   17 at 5.  The Commissioner argues that the ALJ "noted" that Miles' GAF score improved, but

12   "relied on the opinion evidence in the record" to show that Miles was "functionally performing

13   well despite having low GAF scores."  *Id*.

14           "A GAF score is a rough estimate of an individual's psychological, social, and occupational

15   functioning used to reflect the individual's need for treatment."  *Vargas v. Lambert,* 159 F.3d 1161,

16   1164 n.2 (9th Cir. 1998).  "Clinicians use a GAF to rate the psychological, social, and occupational

17   functioning of a patient."  *Morgan*, 169 F.3d at 598 n.1.  "The scale does not evaluate impairments

18   caused by psychological or environmental factors."  *Id*.  "The Commissioner has determined the

19   GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security

20   Administration's] mental disorders listings.'"  *McFarland v. Astrue*, 288 F. App'x 357, 359 (9th

21   Cir. 2008) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000)); *see also Vance v. Astrue*, No.

22   CV 07-04418-SS, 2008 WL 2955140, *5 (C.D. Cal. July 30, 2008) ("GAF scores are not

23   dispositive in social security cases.").  Thus, "an ALJ is not required to give controlling weight to a

24   treating physician's GAF score."  *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009)

25   (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Case No.:  5:11-CV-04013-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Both parties agree that GAF scores are not dispositive of a claimant's limitations.  ECF

2  Nos. 16, 17.   Miles goes further and asserts that an ALJ's reliance on a GAF score in determining

3  a claimant's RFC is error.  The Court need not address this argument, however, because regardless

4  of whether reliance on GAF scores is error, the ALJ did not in fact rely on either Cerezo's or

5  Acenas' GAF scores in making the ALJ's RFC determination.[4]

6    Miles points to two statements by the ALJ, in which the ALJ referenced Acenas' higher

7  GAF score.[5]  Miles argues that these statements reveal that the ALJ relied on Acenas' higher GAF

8  score in determining Miles' RFC.  Taken in their full context, however, the ALJ's statements do

9  not reflect reliance by the ALJ on GAF scores.

10    Miles first points to the ALJ's statement that "[a]lthough [Miles'] global of functioning

11  [sic] scores have reflected a situation involving serious symptoms, some of those scores have also

12  indicated a marked improvement in functioning involving a score up to 70 involving mild

13  symptomatology."  AR 19.  The ALJ, however, also found that Miles' "mental examinations have

14  been consistently normal indicating an absence of significant pathological psychological disorder"

15  and that Miles' "record shows that she was making plans to return to work, was motivated to

16  complete a rehabilitation program, and was perceived as doing well despite having a low score in

17  that time."  *Id.*  The ALJ thus concluded that "the record demonstrates that other information shows

18  a consistently higher level of functioning than incident to [Miles'] GAF scores."  *Id.*

19  _____

[4] The Court notes that the Ninth Circuit does not appear to have spoken directly to the value of

20  GAF scores in determining a claimant's RFC.  In holding that the *failure* to address GAF scores
was not error, however, the Sixth Circuit observed that "[w]hile a GAF score may be of

21  considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."
*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).  The Sixth Circuit's

22  observation thus suggests that an ALJ's use of GAF scores in the RFC determination would not be
error, in contrast to Miles' argument.

23
[5] In Miles' motion, Miles asserts that the ALJ "mentions [Acenas' GAF score] several times in

24  formulating his mental residual functional capacity."  ECF No. 16 at 16.  However, Miles' motion
cites only one ALJ mention of Acenas' GAF score; Miles' reply cites one other.  *Id.*; ECF No. 18

25  at 6.  The Court likewise has found only two references in the ALJ's decision to the GAF score
Acenas assigned Miles.

26

27

28

Case No.:  5:11-CV-04013-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Miles next points to the ALJ's observation that, despite finding Miles depressed, Acenas

2    "scored [Miles] in global assessment of functioning (GAF) at 70 indicating mild symptomatology."

3    AR 18.  The ALJ noted Acenas' GAF score of 70 during the ALJ's description of the relevant

4    medical evidence.  AR 18.  In fact, the ALJ also described the GAF scores Cerezo had assigned

5    Miles.  AR 17.  The ALJ made no other determinations regarding Acenas' or Cerezo's GAF scores

6    in that section.  AR 17-18.

7    The context of the ALJ's statements indicates that the ALJ did not rely on Acenas' higher

8    GAF score in making the RFC determination.  Instead, as the Court has described, the ALJ

9    addressed how the record revealed that Miles functioned at a degree greater than what the lower

10   GAF scores suggested.

11   Miles argues in the alternative that the ALJ erred by discrediting Cerezo's GAF scores.  As

12   the Court explained above, however, the ALJ provided several reasons why the ALJ determined

13   that Miles was functioning at a level above the functionality suggested by the GAF scores that

14   Cerezo had assigned Miles.  Furthermore, as the Court described above in Section III.A.1.c, the

15   ALJ provided specific and legitimate reasons supported by substantial evidence for discounting

16   Cerezo's assessment of Miles' limitations.

17   The Court finds that the ALJ did not rely on Miles' GAF scores in determining Miles' RFC.

18   The Court further finds that substantial evidence supports the ALJ's discounting of Cerezo's GAF

19   scores for Miles.  Miles argument for remand on this basis therefore is unavailing.

20   **3.      Devine's Medical Opinion**

21   Miles presented a 2006 report from Devine based on an examination of Miles that Devine

22   prepared to determine Miles' suitability for the interdisciplinary spine treatment program at

23   SpineOne.  AR 532-539.  Miles contends that the ALJ failed to reference Devine's report.  The

24   Commissioner responds that the ALJ did discuss Devine's findings, and that even if the ALJ did

25   not sufficiently address Devine's opinion, the error was harmless.

26                                                                22

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008).  The ALJ errs by ignoring any medical evidence that the claimant presents. *Smolen v. Chatter*, 80 F.3d 1273, 1282 (9th Cir. 1996); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

Miles asserts that the ALJ never addressed Devine's report or Devine's findings and that the failure to do so was error.  The ALJ, however, did reference Devine's report.  At step two of the analysis the ALJ discussed Devine's findings and cited to Devine's report, although the ALJ does not explicitly name Devine.  AR 16.  In the discussion of Devine's report, the ALJ specifically describes that Miles' "longitudinal mental health record shows treatment beginning in 2006 for psychological symptoms associated with [Miles'] back condition involving major depression," and the ALJ specifically cited to Devine's report.  AR 16.  The ALJ observed that Miles was given a GAF of 45 but that "some of [Miles'] complaints of pain were characterized as 'somatization.'"  *Id.* The ALJ further noted that "[a]dding to [Miles'] difficulties at the time were also situational stresses associated with her family and worker's compensation claim."  *Id.*  From this discussion, it is apparent that the ALJ did not disregard Devine's report.

The fact that the ALJ's discussion of Devine's report appeared in step two rather than step four also is not error.  In *Lewis v. Apfel*, the Ninth Circuit held that the ALJ had not erred in providing a boilerplate statement that the claimant had not met a listed impairment at step three where the ALJ also provided in another section a discussion of the claimant's conditions and treatment history.  236 F.3d 503, 513 (9th Cir. 2001).  The Ninth Circuit observed that the ALJ is required "to discuss and evaluate the evidence that supports his or her conclusion" but not necessarily under a particular heading.  *Id.*  As other courts have pointed out "*Lewis* does not require that the support for the ALJ's conclusions be placed in a specific section of the decision."

1    *Harris v. Astrue*, No. CV 08-0831 JSW, 2009 WL 801347 at *7 (N.D. Cal. Mar. 25, 2009); *see*

2    *also Perez v. Astrue*, 831 F. Supp. 2d 1168, 1175-76 (C.D. Cal. 2011) (finding ALJ's discussion at

3    step two sufficient to support ALJ's RFC finding).

4         The Court observes that Devine's report does not speak to Miles' ability or inability to

5    perform any work-related functions.  Devine in fact offered no limitations findings.  AR 532-539.

6    The ALJ therefore had no limitations to discredit.  As to the substance of Devine's report, the ALJ

7    provided sufficient explanation at step two as to why the ALJ did not find Devine's conclusions

8    regarding Miles' symptoms and GAF score persuasive regarding Miles' functional limitations.  AR

9    18.  The ALJ noted that at the time of Devine's evaluation of Miles, Miles was dealing with

10   stressors arising from her family and her worker's compensation claim, both of which Devine

11   noted in his report.  AR 18, 537-538.  As to Devine's assessment of Miles' pain, the ALJ observed

12   that Devine suspected Miles of somatization, which undermined Miles' claims regarding the extent

13   of her pain.  AR 538.  The Court finds that substantial evidence supports the ALJ's consideration

14   of Devine's report.

15        Furthermore, as described above, substantial evidence supports the ALJ's RFC

16   determination and the ALJ's ultimate decision to discount Cerezo's assessment of Miles'

17   limitations.  Accordingly, remand on these grounds is unwarranted.

18   **B.     Vocational Expert**

19        Miles argues that because the ALJ erroneously determined Miles' RFC, the ALJ posed

20   improper hypothetical questions to McQuery, the VE.  Miles specifically asserts that in the

21   hypotheticals, the ALJ erroneously failed to include Cerezo's or Devine's findings.  The Court has

22   explained why the ALJ did not err in not fully crediting Cerezo's limitations finding or in the

23   ALJ's evaluation of Devine's report.  Because those are the only grounds on which Miles

24   challenges the ALJ's questions to the VE and because the Court has determined that the ALJ did

25   not err in his consideration of the medical evidence from either Devine or Cerezo, the ALJ did not

26
27
28

**United States District Court**
For the Northern District of California

24

Case No.:  5:11-CV-04013-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

err in relying on hypothetical questions that did not include Cerezo's or Devine's opinions. Accordingly, remand on these grounds is not warranted.

## IV.    CONCLUSION

The Court finds that Miles' arguments do not support summary judgment or remand. Cerezo's assessment of Miles' limitations was not uncontroverted, and the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Cerezo's assessment of Miles' limitations.  The ALJ did not rely on Miles' GAF scores in determining Miles' RFC, and the ALJ in fact addressed and evaluated Devine's report.  The Court thus finds that substantial evidence supports the ALJ's RFC determination.  The Court further finds that because substantial evidence supports the ALJ's RFC determination, the ALJ's hypothetical questions to the vocational expert were not erroneous.  The Court therefore GRANTS the Commissioner's motion for summary judgment and DENIES Miles' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: September 24, 2013

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No.:  5:11-CV-04013-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California